UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TAMI E. AUGUST, :
    Plaintiff, :
     :
    v. : CA 10-386 M
     :
MICHAEL J. ASTRUE, :
COMMISSIONER OF SOCIAL SECURITY, :
    Defendant. :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    This matter is before the Court on the request of Plaintiff Tami E. August ("Plaintiff") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI") benefits, under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse the decision of the Commissioner. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

    This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). I find that the Commissioner's determination that Plaintiff is not disabled contains legal error and, therefore, is not supported by substantial evidence. Accordingly, for the reasons set forth herein, I recommend that Plaintiff's Motion for Reversal

of the Disability Determination of the Commissioner of Social Security (Docket ("Dkt.") #7) ("Motion to Reverse") be granted and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Dkt. #9) ("Motion to Affirm") be denied.

**Facts and Travel**

Plaintiff was born in 1963 and was forty-four years old on the date she filed her application. (Record ("R.") at 13, 89) She completed the eleventh grade and is able to communicate in English. (R. at 13, 108, 113)

Plaintiff filed an application for SSI on September 7, 2007, alleging disability beginning July 1, 2007, due to obesity, lower back pain, bilateral knee pain, left shoulder pain, diabetes, high blood pressure, and migraine headaches.[1] (R. at 7, 9, 22, 89-95) Her application was denied initially, (R. at 7, 33, 41-43), and on reconsideration by a Federal Reviewing Official, (R. at 7, 38-40), and Plaintiff thereafter filed a written request for a hearing before an administrative law judge ("ALJ"), (R. at 7, 50). A hearing was conducted on April 29, 2010, at which Plaintiff, represented by counsel, appeared and testified. (R. at 7, 19) An impartial vocational expert ("VE") also testified. (Id.) In a decision dated May 11, 2010, the ALJ found that Plaintiff was not disabled, as defined by the Act, at any time since September 7,

---

[1] On reconsideration, Plaintiff also alleged disability due to depression. (R. at 10, 46, 133)

2007.  (R. at 7-14)  The Decision Review Board selected Plaintiff's claim for review, (R. at 1, 4), and on August 24, 2010, notified Plaintiff that it had not completed its review within the allotted time, (R. at 1), thereby rendering the ALJ's decision the final decision of the Commissioner, (id.).  Thereafter, Plaintiff filed this action for judicial review.

**Issue**

The issue for determination is whether substantial evidence in the record supports the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act since the date her application was filed.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. at 30 (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

3

uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

**Law**

An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). A claimant's complaints alone cannot provide a basis for entitlement when they

4

are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a) (2011).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled.  See 20 C.F.R. § 416.920(a) (2011); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy.  See 20 C.F.R. § 416.920(b)-(g).  The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the

5

instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since September 7, 2007, the date her application was filed, (R. at 9); that Plaintiff's obesity, lower back pain, bilateral knee pain, left shoulder pain, and migraine headaches were severe impairments, but her hypertension, diabetes, and depression were not, (R. at 9-10); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (R. at 10); that Plaintiff had the residual functional capacity ("RFC") to perform light work[3] except that she could only occasionally climb, balance, stoop, kneel, crouch, crawl, or reach overhead with her left upper extremity, (id.); that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not

---

[3] Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (2011).

credible to the extent they were inconsistent with the above RFC assessment; (R. at 11); that Plaintiff had no past relevant work (R. at 13); that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which she was able to perform, (id.); and that, therefore, Plaintiff had not been under a disability, as defined in the Act, since September 7, 2007, the date her application was filed, (R. at 14).

## Errors Claimed

Plaintiff alleges that: 1) the ALJ failed to give good reasons for rejecting the treating source opinion of Diane Minasian, M.D., as required by 20 C.F.R. § 416.927(d)(2); 2) the ALJ violated the requirements of 20 C.F.R. § 416.927(d) and (f) and Social Security Ruling 96-2p by giving controlling weight to a nonexamining source statement; 3) the ALJ's RFC finding and finding regarding the VE's testimony are not supported by substantial evidence; and 4) Plaintiff's testimony regarding the severity of her pain and its affect on her life is consistent and credible.

## Discussion

The ALJ found that Plaintiff had the RFC for light work,[4] but that she was limited to only occasional climbing, balancing, stooping, kneeling, crouching, crawling, or reaching overhead with her left upper extremity. (R. at 10) The ALJ subsequently stated

---

[4] See n.3.

that:

> To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as assembler of which there are 800 such positions in the regional economy and 80,000 such positions in the national economy; inspector of which there are 300 and 12,000 such positions in the national economy; and packer of which there are 300 and 26,000 such positions in the national economy.

(R. at 13) The ALJ relied on the VE's testimony to find, at step five, that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 14) He, therefore, found Plaintiff not disabled. (Id.)

Plaintiff argues that the ALJ's findings regarding the VE's testimony and, by implication, the ALJ's step five finding, are not supported by substantial evidence because "the ALJ incorrectly states that he used that RFC to elicit testimony f[ro]m the Vocational Expert hired to appear and give testimony at the hearing." Plaintiff's Memorandum in Support of Her Motion for Reversal of the Disability Determination of the Commissioner of Social Security ("Plaintiff's Mem.") at 11.[5]  The Court is

---

[5] The pages of Plaintiff's Memorandum in Support of Her Motion for Reversal of the Disability Determination of the Commissioner of Social Security ("Plaintiff's Mem.") are not numbered. The Court has performed this function and cites accordingly. However, counsel's attention is

8

constrained to agree.

It is the Commissioner's burden at Step Five of coming forward with evidence of specific jobs in the national economy that the claimant can still perform. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). "The [Commissioner] can sustain his burden of proof of showing that there are jobs in the national economy that the claimant can do by presenting the testimony of a vocational expert. However, the ALJ must ask the vocational expert a proper hypothetical that sets forth all of the claimant's impairments." Algiere v. Sullivan, No. 88-4245-CV-C-9, 1990 WL 13515, at *8 (W.D. Mo. Feb. 6, 1990)(citing Roberts v. Bowen, 783 F.2d 110 (8th Cir. 1986)). The First Circuit has similarly cautioned that "in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Other courts have reached the same conclusion. See, e.g., Cotner v. Comm'r of the Soc. Sec. Admin.,

---

directed to District of Rhode Island Local Rule ("DRI LR") Cv 5(a), which provides, in relevant part:

> (3) Format; Page Numbering. Unless otherwise provided or ordered by the Court, all documents shall be double-spaced and typed in at least 12-point font. Footnotes shall be in at least 10-point font and may be single-spaced. **Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page**.

DRI LR Cv 5(a)(3) (bold added).

No. 2:09-cv-02657, 2011 WL 902131, at *6 (E.D. Cal. Mar. 15, 2011) ("Hypothetical questions posed to a vocational expert must set forth all the substantial, supported limitations and restrictions of the particular claimant."); Cramer v. Astrue, No. 1:08-CV-176, 2009 WL 2927286, at *7 (E.D. Tenn. Sept. 3, 2009)("Hypothetical questions to the VE must precisely and comprehensively set out every physical and mental impairment that the ALJ accepts as true and significant."); id. at *8 ("The hypothetical question must state with precision the physical and mental impairments of the claimant."); Algiere v. Sullivan, No. 88-4245-CV-C-9, 1990 WL 13515, at *8 (W.D. Mo. Feb. 6, 1990)("The ALJ did not ask a hypothetical that properly summarized claimant's impairments.").

Here, despite the ALJ's erroneous statement to the contrary, (R. at 13), the VE was not presented with a hypothetical question which contained the RFC and limitations the ALJ had found to be supported by the record, (R. at 30-32); see also Goulet v. Astrue, No. 3:06-cv-976-J-TEM, 2008 WL 681049, at *6 (M.D. Fla. Mar. 7, 2008)("In this case, the ALJ's decision reflects he relied heavily on the testimony of a vocational expert to determine Plaintiff could return to her past relevant work. However, review of the hearing testimony and the ALJ's decision reveals there are marked differences between testimony attributed to the vocational expert and what he actually said.")(internal citation omitted). In fact, the VE was barely presented with a hypothetical question at all.

10

As the court noted in Goulet:

> At the hearing the ALJ did not ask a hypothetical question in any form. Nor did the ALJ state a residual functional capacity for the claimant. In fact, during the course of the hearing, the ALJ's questioning of [p]laintiff and the vocational expert was extremely brief. At no point in the hearing did the ALJ refer to any limitations or impairments attributable to [p]laintiff.
>
> The vocational expert answered only the questions he was asked. He did not testify that the positions he identified "would not be precluded by the above found residual functional capacity for light work." There was no RFC stated at the hearing. Nor did the VE "further" testify that "based upon the claimant's residual functional capacity for light work with the above noted non-exertional limitations, the claimant could return to her past relevant work ...."

2008 WL 681049, at *6 (internal citation omitted); see also Cramer, 2009 WL 2927286, at *8 ("There is simply no hypothetical question asked. The ALJ did not tell the VE what level of ... impairment he found from all of the evidence he found credible.").

The ALJ's questioning of the VE in the instant case was similarly brief, (R. at 30-32), and the Court reproduces it in its entirety:

Q   And would you identify yourself please?

A   Kenneth R. Smith.

Q   Thank you. Let's see if we have any past relevant work. We need to go back fifteen years, which would be '95[,] wouldn't it?

A   Yes. The only work I saw in there, Your Honor, was the working in the food service at the Aramark. But in looking at the earnings, and the earnings record wasn't that significant either though.

11

Q   No. There doesn't appear to be any relevant work?

A   No. Because I looked at one year and it was $358.00, and the next year, and this is 2001, I think, it was $358.00, and then in 2002 $682.00.

Q   Yeah. Okay. So there is no past relevant work?

A   Essentially no. Because before that the last work noted was back in '82 to '89 working in a jewelry factory.

Q   And do the jewelry jobs still exist?

A   There is still some around. Sure. You know, and whether it is in a factor[y] or a job shop, or something like that.

Q   And what are they, the standard carder and wrapper?

A   Yeah. The assembly and inspecting is part of the total numbers. There is still some around but, I mean, specifically identified jewelry, and specific jewelry shop numbers I don't have that.

Q   No.

A   But I can give you general assembling, and this is sedentary.[6]

Q   And sedentary jobs in Rhode Island and Massachusetts?

---

[6] Sedentary work

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). Although the ALJ found Plaintiff to be capable of performing light work, it is presumed that if one can perform light work, the person is also capable of sedentary work. See 20 C.F.R. § 416.967(b); see also n.3.

> A   Well, you've got assembler with 800 to 900 for Rhode Island and Southeastern Mass., and then about 80,000 in the United States. The inspector would be 200 to 300 in Rhode Island and Southeastern Mass., and about 12,000 in the United States. And then hand packager approximately 300 around the Southeastern Mass., and 26,000 in the United States.
>
> Q   If an individual suffers from headaches to the point that they lose their ability to focus, and would need to lie down for as much as, for instance, an hour at a time. It would preclude this, and any kind of work wouldn't it?
>
> A   That's correct.

(R. at 30-32) Plaintiff's counsel asked no questions. (Id.)

As noted above, the ALJ relied on the VE's testimony in reaching his conclusion at step five that Plaintiff was capable of performing jobs which existed in significant numbers in the national economy and, as a result, was not disabled. (R. at 14); see also Goulet, 2008 WL 681049, at *6. Because the VE was not asked if someone with Plaintiff's RFC could perform the jobs he listed, the ALJ could not rely on the VE's testimony to satisfy his burden. See Cotner, 2011 WL 902131, at *6 ("If the hypothetical does not reflect all of the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value."); Cramer, 2009 WL 2927286, at *8 ("A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which [a plaintiff] can perform. ... Without a properly formed hypothetical question, [the VE's] opinion cannot support that conclusion.")

(first alteration in original); Goulet, 2008 WL 681049, at *6 ("Given the lack of actual testimony, it is hard to accept the ALJ's finding that '[t]his credible testimony is accepted by the Administrative Law Judge and the claimant is found to be capable of her past work ....'")(second alteration in original); cf. Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994)("The ALJ's hypothetical ... impermissibly omitted any mention of a significant functional limitation arising from the fatigue symptoms associated with CFS.[7] Because the ALJ's hypothetical assumed that fatigue did not pose a significant functional limitation for the claimant, and because the medical evidence did not permit that assumption, the ALJ could not rely on the vocational expert's response as a basis for finding claimant not disabled.")(citing Arocho, 670 F.2d at 375). Presumably had the VE been aware of Plaintiff's limitations, the number of jobs cited would have been at least somewhat reduced. The VE may have assumed he was evaluating a hypothetical claimant capable of performing the full range of light work. That is not this Plaintiff.

Defendant argues that the ALJ's failure to ask the VE a hypothetical question that matched the ALJ's assessed RFC-light work with limitations to occasional climbing, balancing, stooping, kneeling, crouching, crawling, or left-arm overhead reaching-is

---

[7] Chronic Fatigue Syndrome. Merriam Webster's Medical Desk Dictionary 126 (1996).

14

harmless. Defendant's Mem. at 16. According to Defendant, "[a]s Plaintiff's RFC contained non-exertional restrictions that did not substantially erode the occupational base, the ALJ could have relied solely on the Grids to find Plaintiff not disabled." Id. The Court rejects this argument in the circumstances of this case.

Social Security Ruling ("SSR") 85-15, 1985 WL 56857 (S.S.A.), on which Defendant relies, see Defendant's Mem. at 17, states that "[l]imitations in *climbing and balancing* can have varying effects on the occupational base, depending on the degree of limitation and the type of job. ... Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15, 1985 WL 56857, at *6. However, the ALJ's limitation of Plaintiff to occasional climbing and balancing, (R. at 10), was not the only limitation he found. The ALJ also found Plaintiff limited to only occasional stooping, kneeling, crouching, crawling, and reaching overhead with her left arm. (Id.) According to SSR 85-15:

> If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. ... [C]rawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work.

1985 WL 56857, at *7. Regarding reaching, the Ruling states:

> Reaching ... and handling ... are activities required in almost all jobs. Significant limitations of reaching or

15

>handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational specialist] may be needed to determine the effects of the limitations.

SSR 85-15, 1985 WL 56857, at *7. "In more complex cases, a person or persons with specialized knowledge would be helpful. ... Vocational experts may testify for this purpose at the hearing and appeals levels." Id. at *3.

It is not for this Court in the first instance to determine whether this is a simple case requiring no expert guidance or a more complex one where such guidance from a VE "would be helpful." Id. Given the number of limitations included in Plaintiff's RFC, the Court is not persuaded that the ALJ's reliance on the VE's testimony, based on insufficient information, is harmless.

The Court finds that the ALJ's step five finding that there were jobs which existed in significant numbers in the national economy which Plaintiff was capable of performing is not supported by substantial evidence. See Algiere, 1990 WL 13515, at *9 ("The ALJ's finding that claimant was capable of substantial gainful employment was not supported by substantial evidence."). Accordingly, the matter must be remanded for further consideration of whether jobs exist in significant numbers in the national economy which Plaintiff is still capable of performing given the

RFC and limitations assessed by the ALJ. I so recommend.[8]

**Summary**

On remand, the ALJ may reach the same result. See Goulet, 2008 WL 681049, at *7 ("Plaintiff is cautioned, however, that this opinion does not suggest [p]laintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether [p]laintiff is disabled within the meaning of the ... Act."). However, at present the Court cannot find that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled given his failure to include Plaintiff's RFC and limitations in his questioning of the VE and subsequent reliance on the VE's testimony.

**Conclusion**

The Court finds that the ALJ's determination that Plaintiff was not disabled since September 7, 2007, the date her application

---

[8] Because the Court finds this issue to be dispositive, it need not address Plaintiff's other claims of error. The Court notes, however, that the ALJ should not have afforded controlling weight to the opinion of Dr. S. Green. (R. at 12) Social Security Ruling ("SSR") 96-2p provides that in order to be given controlling weight a medical "opinion must come from a 'treating source' as defined in 20 CFR [§§] 404.1502 and 416.902. Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to 'controlling weight.'" SSR 96-2p, 1996 WL 374188, at *2 (S.S.A.). The ALJ was bound to follow SSR 96-2p. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1125 (1st Cir. 1986)("Social Security Rulings are binding on all Social Security Administration personnel, including state agency adjudicators, administrative law judges, and the Appeals Council."); see also Rose v.Shalala, 34 F.3d 13, 127 n.2 (1st Cir. 1994)(citing McDonald).

was filed, contains legal error and, therefore, is not supported by substantial evidence in the record. Accordingly, I recommend that Plaintiff's Motion to Reverse be granted and that Defendant's Motion to Affirm be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
December 8, 2011